**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

DENNIS EMERSON,            )
                        )
        Petitioner       )
                        )
      v.              )      No. 06-CV-0452
                        )
DEIRDRE BATTAGLIA,    )
                        )
        Respondent.   )

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Court Judge:

Dennis Emerson, a prisoner at Stateville Correctional Center in Joliet, Illinois, now petitions

for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. We deny the petition.

**BACKGROUND**

On August 12, 1979, Emerson and another person, Richard Jackson, robbed Robert Ray and

Delinda Byrd after an after-hours meeting at Ray's lounge in Chicago. (Pet. at 2.) After the men

tied Ray and Byrd by the hands and feet, Emerson stabbed Ray in the chest with a pair of scissors.

(*Id.*) Ray survived the attack by playing dead and eventually testified at Emerson's resentencing

hearing.[1] Ray further testified that after he was stabbed, he saw Emerson walk towards Byrd and

"[bring] his hands down toward her one time." (*Id*.) Ray did not actually see Emerson stab Byrd,

but she eventually died of stab wounds incurred that evening. (*Id.* at 3.)

Emerson was convicted of murder, armed robbery, arson, and attempted murder after a 1985

---

[1]      It is not clear from the pleadings if Byrd also testified at Emerson's trial. (*See, e.g.,* Pet. at 2.)

trial in the Circuit Court of Cook County in Chicago.  (Pet. at 1.)  He was sentenced to death.  (*Id.*)

The Illinois Supreme Court eventually reversed his arson conviction, but upheld the remainder of

his conviction and death sentence.  (*Id.*)  In 1995, we granted Emerson a writ of habeas corpus with

respect to his death sentence, finding that Emerson was denied his Sixth Amendment right to

effective counsel at his sentencing hearing.  (*Id.*)  Accordingly, we ordered the state court to conduct

a resentencing hearing, which was held in July 1997.  (*Id.* at 2.)

At the resentencing hearing, Emerson's lawyer argued that although Emerson had been

convicted of murder, the State had not proven that Emerson "actually struck the fatal blow that led

to Delinda Byrd's death."  (*Id.* at 3.)  Before the jury began deliberations, the trial judge gave the

following relevant instructions:

> Before [Emerson] may be found eligible for a death sentence under
> the law, the State must prove the following propositions:
>
> First:          That [Emerson] was 18 years old or older at the time
> of the commission of the murder . . . and
>
> Second:     That the following statutory aggravating factor exists:
> . . . .
>
> *The murdered person was actually killed by*
> [Emerson]; *and*
>
> *In performing the acts which caused the death of the*
> *murdered person*, [Emerson] *acted with the intent to*
> *kill the murdered person or with the knowledge that*
> *his acts created a strong probability of death or great*
> *bodily harm to the murdered person* . . . .
>
> If you cannot unanimously find that both the first and second
> propositions have been proved beyond a reasonable doubt, then
> [Emerson] is not eligible for a death sentence.

(Ex. Z to Answer, Resentencing Jury Instructions, at C168.) (emphasis added)

At some point during deliberations, the jury delivered a written question to the trial judge: "Do we unconditionally accept the previous judgment of guilty for murder, attempted murder and two counts of armed robbery as fact when evaluating this case or can we apply reasonable doubt to the prior guilty verdicts?" (Ex. Y to Answer.) Emerson's lawyer requested that the judge answer the jury's question by responding, "You are required to deliberate solely based on the evidence you have heard in this case in accordance with my instructions." (Ex. F, portion of state court record, at 30.) The State suggested that the judge respond, "you have the evidence before you that [Emerson] has been convicted of armed robbery, attempted murder and murder. You are to consider that evidence in the eligibility phase." (*Id.*) The judge answered the jury's question in terms more similar to those suggested by Emerson's lawyer: "You have received the evidence and jury instructions. Please continue to deliberate." (*Id.*) Neither side objected to this instruction, and the jury eventually returned a verdict finding Emerson eligible for the death penalty.

On direct appeal, the Illinois Supreme Court rejected Emerson's challenge to the trial court's eligibility instruction. The Illinois Court found in part that "we are unable to discern any significant difference between the answer suggested by defense counsel and the answer the circuit court provided to the jury;" therefore, Emerson waived any objection to the jury instruction. *People v. Emerson*, 727 N.E.2d 302, 333 (Ill. 2000).

Emerson filed for post-conviction relief, alleging in relevant part that he was denied effective assistance of counsel at his resentencing hearing through his resentencing lawyer's acquiescence in "an inadequate response to a jury question regarding effects of prior verdicts on his eligibility for

the death penalty." In August 2006,[2] an Illinois appellate court rejected Emerson's claim, finding that Emerson's sentencing counsel's assistance satisfied the requirements of the Sixth Amendment as set forth in *Strickland v. Washington*, 466 U.S. 668 (1994). (App. A to Pet.)

Emerson now files for writ of habeas corpus, challenging the Illinois appellate court's holding with respect to his claim of ineffective assistance of counsel at his resentencing hearing.

## ANALYSIS

### I. Standard of Review

Since the 1996 effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254, we must in our consideration of a petition for writ of habeas corpus seek to avoid "retrials" of state court proceedings and to "ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). To grant habeas corpus relief, we must find that the state court's decision has acted "contrary to" or unreasonably applied "clearly established federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254; *see also Murrell v. Frank*, 332 F.3d 1102, 1111 (7th Cir. 2003). A state court decision is "contrary to" clearly established federal law if the state court confronted facts that are "materially indistinguishable from a relevant Supreme Court precedent and arrive[d] at a result opposite to [the Supreme Court's result." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state court decision is an "unreasonable application" of clearly established law only if the decision is "objectively unreasonable," not merely "incorrect." *Id.* at 410. State court factual findings are

---

[2]    In 2003, then-Governor of Illinois George Ryan commuted Emerson's death sentence to natural life imprisonment. (Pet. at 5.) Although the Illinois courts initially held they lacked power to review what had effectively become an executive-imposed sentence, the Illinois Supreme Court's ruling in *People v. Mata*, 217 Ill.2d 535 (2005) opened the door for Emerson to challenge decisions related to eligibility. His appeal was reinstated in April 2006.

"presumed to be correct" on habeas review. 28 U.S.C. § 2254(e)(1).

## II.  Emerson's Ineffective Assistance of Counsel Claim

Emerson's sole claim in his § 2254 petition is that counsel at his resentencing hearing provided ineffective assistance by essentially acquiescing in the judge's answer to the jury's presumption of guilt question. Emerson contends that:

> [C]ompetent counsel at trial would have requested an admonition or reminder to the jurors that, while they were bound by prior findings of <u>guilt</u> as to murder and armed robbery, those verdicts did not establish all elements of <u>eligibility</u>, *i.e,* they did not encompass a determination that Petitioner had actually killed the deceased.

(Pet. at 7.) (emphasis in original)

Courts analyze the Sixth Amendment right to effective assistance of counsel by means of the framework set forth in *Strickland*, 466 U.S. 668. To support an ineffective assistance claim, Emerson must show that specific acts or omissions by his lawyer a) fell below an objective standard of reasonableness under the circumstances; and b) yielded a reasonable probability that, but for the errors, the proceeding would have culminated in a different result. *Id*. at 688-94. In the context of a § 2254 review, however, we do not simply apply the *Strickland* test as if we were reviewing the state court conclusions anew. Rather, we must determine that the Illinois courts either confronted facts that are "materially indistinguishable from a relevant Supreme Court precedent and arrive[d] at a result opposite to [the Supreme Court's result," or made a decision that was "objectively unreasonable." *Williams*, 529 U.S. at 405, 410.

We find that the Illinois appellate court did not dispose of Emerson's ineffective assistance of counsel claim in a way that was contrary to or an unreasonable application of *Strickland*. The court first found that Emerson failed to satisfy *Strickland*'s first prong:

[I]t is clear that the admonition or reminder advanced by appellate defense counsel [the same recommended admonition/reminder that Emerson advances here] was already part of the instructions given to the jury. Consequently, sentencing counsel's request that the jury be told, 'you are required to deliberate solely on the evidence heard in this case in accordance with my instructions,' was in no way ineffective assistance of counsel under prevailing professional norms.

(Ex. V to Answer, at 7.)  The Illinois appellate court did not unreasonably apply the first *Strickland* prong: the jury instructions required the sentencing jury to find beyond a reasonable doubt that Emerson "actually killed" Byrd and that Emerson "acted with the intent to kill" Byrd or "with the knowledge that his acts created a strong probability of death or great bodily harm" to Byrd.  (Ex. Z to Answer, Resentencing Jury Instructions, at C168.)  Therefore, the jury had all along the instructions Emerson now requests.  The Illinois appellate court correctly identified and reasonably applied *Strickland*'s first prong in concluding that Emerson's lawyer did not fail to perform to prevailing professional norms by agreeing to re-direct the jury to those instructions.

Likewise, the Illinois appellate court did not reach a decision that was "contrary to" or an "unreasonable application of" federal law in concluding that "there is no reasonable probability that, absent his counsel's errors, defendant would not have been sentenced to death."  (Ex. V to Answer, at 7-8.)  Again, the Illinois appellate court identified the proper standard.  Further, because the jury already had the instructions Emerson now requests, the Illinois appellate court's conclusion fell well within the "boundaries of permissible differences of opinion."  *See Williams*, 529 U.S. at 411.  Accordingly, we find that the Illinois appellate court's denial of Emerson's resentencing appeal was neither "contrary to" nor an "unreasonable application of" the clearly established federal law embodied in *Strickland*.

6

## CONCLUSION

For the reasons stated above, we deny Dennis Emerson's petition for writ of habeas corpus.

It is so ordered.


_____

Honorable Marvin E. Aspen

United States District Court Judge



Date: July 30, 2007